GRAWUNDER v. GOTOSKEY. (No. 7583.)

(Court of Civil Appeals of Texas. Galveston May 24, 1918.)

1. FRAUDS, STATUTE OF ⚖️70 — PAROL AGREEMENT—CHANGE IN KNOWN BOUNDARY.

A parol agreement between owners of adjacent lands to fix their boundary line at a place other than its known and established location is in contravention of the statute of frauds, and therefore ineffectual to change the true location of the line.

2. FRAUDS, STATUTE OF ⚖️70 — PAROL AGREEMENT—BOUNDARIES.

Where adjacent landowners, the boundary between them never having been marked or fixed on the ground by a surveyor, and there being nothing in their deeds whereby the location could be fixed, other than the calls for courses and distances, employed a surveyor to locate the line, and, having no reason to doubt the line as fixed by him was the true line, accepted it as such, and erected their fences accordingly, their parol agreement establishing boundary was valid, and not within the statute of frauds.

3. FRAUDS, STATUTE OF ⚖️70 — PAROL AGREEMENT — BOUNDARIES — DISCOVERY OF MISTAKE.

A parol agreement fixing boundary line will not be set aside merely because it is subsequently discovered that the agreed line is not the true line.

4. BOUNDARIES ⚖️42—ACTION TO ESTABLISH —VERDICT.

In trespass to try title to establish boundary, where the line claimed by plaintiff was definitely described in his petition, general verdict for plaintiff established the line as described, and was sufficiently definite to support a judgment establishing the line as claimed.

5. JUDGMENT ⚖️256(1) — CONFORMITY TO VERDICT—ACTION TO ESTABLISH BOUNDARY.

The fact that, in addition to the description of the line given in the petition, the judgment gives the variation at which the line is run, and other data shown by the undisputed evidence identifying the line described in the petition, does not make it obnoxious to the rule

which requires the judgment to follow the verdict.

Appeal from District Court, Austin County; Norman G. Kittrell, Special Judge.

Suit by Joe Gotoskey against H. Grawunder. Judgment for plaintiff, and defendant appeals. Affirmed.

C. G. Krueger, of Bellville, and Mathis & Teague, of Brenham, for appellant. Johnson, Matthaei & Thompson, of Bellville, and Searcy & Botts, of Brenham, for appellee.

PLEASANTS, C. J. This suit, brought in the form of an action of trespass to try title, involves only a question of boundary. The suit was brought by appellee against appellant. After a general description of plaintiff's land, the petition describes and locates the east boundary line thereof, which is the line in dispute, as follows:

"The third above described line begins in the center of a lane in the prairie, which lane is located between the tracts of land of H. Grawunder, defendant, and Joe Gotoskey, plaintiff, between the north corner of Grawunder and the east corner of Gotoskey, and runs thence south 25 west (in fact south 23 degrees, 37 west) with a marked line marked by hacks on trees and through the center of an ash tree about 15 inches in diameter, marked fore and aft by old hacks, which tree is located about 700 or 750 varas from the league line, to a corner near the center of said lane and in a straight line, the same being the south or southeast corner of said 25-acre tract owned and claimed by plaintiff."

The petition further alleges:

"Plaintiff shows to the court that the east line of plaintiff is the west line of the land owned by defendant, and runs through the middle of an old line inclosed by the fence of plaintiff on one side and by the fence of defendant on the other side, the location of said division line and lane having been fixed, established, and agreed upon by A. C. Jackson and J. H. Jackson, the former owners and vendors of plaintiff and defendant, which division line was agreed upon by said vendors and lane established and fence constructed on each side of said lane more than 25 years ago."

The defendant answered by general denial, plea of not guilty, and by special plea, averring that the line in question was not located as claimed by plaintiff, and describing its location as claimed by defendant. The evidence shows that in December, 1886, A. C. Jackson conveyed to his brother, J. H. Jackson, the 25 acres of land on the W. C. White league claimed by plaintiff in this suit. The two Jacksons at the date of the execution of this deed owned adjoining tracts of land on the league, and the 25 acres sold by A. C. to J. H. Jackson was a strip of land along the west side of the tract owned by A. C. Jackson. The deed conveying this strip of 25 acres describes it as follows:

"Beginning at a stake in the lake from which a locust marked 'X' bears S. 87½ deg. E. 4 vrs. and another locust marked 'X' bears N. 51½ W. 10 vrs., both of which bearing trees are gone, being also the southwest corner of a 240 acre survey out of a 392 acre tract for A. C. Jackson; thence north 25 E. 2596 vrs. to a stake, said Jackson's North corner; thence

south 45 E. 57 vrs. to an imaginary stake; thence south 25 W. about 2590 vrs. to the south line of said A. C. Jackson's 242 acre survey; thence north 65 W. 56 vrs. to the place of beginning, containing 25 acres of land."

About 2 years after this deed was executed the Jacksons, desiring to fence their respective tracts of land, employed a surveyor named Francis to locate the dividing line between their tracts, which was the third or east line called for by the field notes in the deed to the 25-acre strip above set out. This line was located and marked by the surveyor as now claimed by appellant, and the Jacksons constructed their division fence along said line. They afterwards made a lane between them, the line being in the center of the lane. A. C. Jackson testified:

"I do not remember the date of the establishment of the lane, but said lane was agreed upon and recognized by myself and J. H. Jackson as the dividing line. Said lane was recognized by us as the dividing line between our lands for about 15 years, or as long as we owned the property in question. Said lane was about 16 feet wide. The said lane began at the upper or north line of our respective tracts, and extended to the league line on the south. My entire tract of land was under fence. My entire tract of land was under fence from the time I built a fence along or near the west line of said tract or lane fence. Said fence was in good condition along the land during the entire time I owned it. I sold said land in question to John Ziewert above five years ago."

J. H. Jackson testified:

"My brother's land was in Austin county on the White league just east of mine. We had the line between us surveyed and divided by fence, and afterwards we made a lane there that went clear through about 16 feet wide, the center of the lane being the line. The lane went through the old lake. The lane was always agreeable to us, and was recognized by myself and A. C. Jackson as the dividing line between our land from the time it was built until we sold the land, and the lane is the dividing line. The lane extended from the northeast to the southeast corner of my land. It was between my land and the land of A. C. Jackson. We built the fence down to the lake. First that was our dividing line, and later on I fenced my whole tract of land."

John Ziewert sold to appellant the land conveyed to him by A. C. Jackson. Appellee, Joe Gotoskey, bought the J. H. Jackson tract about a year prior to the time Ziewert bought from A. C. Jackson. Ziewert testified:

"I once owned some land in Austin county. I bought it about 6 years ago from Ab Jackson. Joe Gotoskey owned the land adjoining it. Joe Gotoskey bought the land from John Jackson about 1 year before I bought from Ab Jackson. The boundary line on the west between my land and Joe Gotoskey is in the middle of a little lane between Joe Gotoskey and myself. I sold the land to H. Grawunder, and told him while in Bellville what Ab Jackson told me about the line being in the middle of the lane. This was the line between myself and Joe Gotoskey. Ab Jackson told me that he and his brother John Jackson had agreed on the line in the middle of the lane."

E. B. Wilson testified he knew John and Ab Jackson, owned land adjoining the lands of the Jacksons; remembered when the lane between Ab and John Jackson's land was

made. The Jacksons told him it was the dividing line between their lands. The lane was kept up 20 to 25 years. The Jacksons were honorable men.

Joe Gotoskey, the plaintiff, testified he had lived on the place he purchased from John Jackson. The fences around the place that he purchased from John Jackson are in the same place they were in when he purchased the place.

There is testimony .that the line in the center of the lane which was established by the Jacksons does not run in accordance with the course called for in the deed from A. C. to J. H. Jackson; and, if it be located in accordance with the calls in the deed, it will leave the old lane after about half its distance is run, and will give appellant 4 or 5 acres of land more than he has with the line located where it was fixed by Francis and agreed upon by the Jacksons.

Ludwig, the surveyor who made the survey establishing the line as claimed by appellant, testified:

"I could not tell you what variations Mr. Francis used when he ran those lines. He might have used the same variations. Variations get lower every year a few minutes. If the variations used by me in making that survey and the one used by Mr. Francis were different, we would not come out at the same point; but we would run different. In running those lines I got my variations on the north line, which is the recognized line. I did not survey the 25 acres of land that Ab Jackson sold to John Jackson. I do not know anything about that 25 acres."

H. Grawunder, the defendant, testified:

"I bought 217 acres of land from John Ziewert in 1910; paid $29 per acre for it. At the time I bought it I did not know, and never heard, that the Jacksons among themselves had ever agreed about any boundary line between them."

After the plaintiff had introduced his testimony as to the location and establishment of the line by the Jacksons above set out, the defendant moved to strike out said testimony on the following grounds:

"First. Because there is not any fact or facts alleged by plaintiff in his fourth amended original petition which charges that there was a dispute between the said Jacksons as to where the boundary line between them ever was, or that the boundary line between their respective tracts of land was ever in dispute or in doubt.

"Second. Because it is absolutely essential in pleading an agreed boundary line to set forth every essential fact which would make an agreed boundary line valid, and legally binding on the parties to such an agreed boundary line.

"Third. Because the plaintiff's testimony fails to show that, if the said Jacksons agreed upon a boundary line, such an agreement was in writing, that it was duly acknowledged and recorded, or that the defendant had any notice of such an agreement when he purchased.

"Fourth. Because the testimony of an agreed boundary line is insufficient to establish an agreed boundary line between said Jacksons, because if such an agreement was had it was oral, and because said testimony does not show that the boundary line between the lands of the said Jacksons was ever in doubt or in dispute, and that, in order to settle a doubtful or disputed boundary line, they agreed upon a line.

"Fifth. Because there is no pleading by the plaintiff upon which to base the admission of said testimony of agreed boundary line or to justify the admission of such testimony."

This motion was overruled by the court. Defendant then moved to instruct the jury to return a verdict in his favor on the grounds that the pleading and evidence were insufficient to establish an agreed line, and there was no sufficient evidence to sustain plaintiff's plea of limitation. The court refused this motion, and on its own motion instructed the jury to return a verdict for the plaintiff on the grounds that the undisputed evidence established an agreed boundary line as claimed by plaintiff, and also showed title in plaintiff under the statute of limitation of 10 years. In accordance with this instruction the 'jury returned the following verdict: "We, the jury, find for plaintiff." Upon this verdict the court rendered judgment for plaintiff, fully describing the land claimed by plaintiff, and establishing and describing the line as claimed and described by plaintiff in his pleading and identified by the evidence. Under appropriate assignments of error appellant complains of the several rulings of the court above set out. We do not think the court, in refusing defendant's motions to strike out the testimony and instruct a verdict in his favor, nor in instructing a verdict in favor of plaintiff, committed any error.

[1-3] The contention that a parol agreement between owners of adjacent lands to fix their boundary line at a place other than its known and established location is in contravention of the statute of frauds, and therefore ineffectual to change the true location of the line, is perfectly sound, but we do not think the principle is applicable to the facts in this case. The location of the line in dispute had not been established, and could not have been known to the Jacksons at the time they had the survey made and the line established as now claimed by plaintiff, and which was accepted and recognized as the boundary line by the owners of the land for more than 25 years. It seems to us that every essential of a valid parol agreement establishing a boundary line is shown by the undisputed evidence. The line had never been marked and fixed on the ground by a surveyor. There was nothing in the deed by which its location could be fixed other than the calls for course and distance. In this situation the parties, being desirous of fencing their lands, employed a surveyor to locate the line for them, and, having no reason to doubt that the line as fixed by the surveyor was the true line, accepted it as such, and erected their fences in accordance therewith. To hold that, after more than 25 years' recognition by the owners of the land of this agreed line as the true line, a remote vendee of one of the owners who agreed to the line as originally surveyed and established can, upon discovering from a resurvey that the first survey was inaccurate, change the line as originally established would destroy the doctrine that a boundary line can be fixed by parol agreement. There

is no rule of decision more firmly established than that a parol agreement fixing a boundary line will not be set aside merely because it is subsequently discovered that the agreed line is not the true line. Cooper v. Austin,. 58 Tex. 501; Lecomte v. Toudouze, 82 Tex. 214, 17 S. W. 1047, 27 Am. St. Rep. 870; Coleman v. Smith, 55 Tex. 259.

The cases of Voigt v. Hunt, 167 S. W. 745, and Ware v. Perkins, 178 S. W. 846, are cited by appellant in support of his contention. In the Voigt Case the parties knew that the line agreed upon by them was not the true line, and the court correctly held that to uphold a parol agreement of this kind would in effect sanction the passing of title to land contrary to the statute of frauds. In the Ware Case there was no agreement fixing a boundary. The owner of a large tract of land executed a lease to a portion thereof described as follows:

"Beginning at a point 1500 varas from its N. E. corner on the E. line of said [named] survey. Thence W. to the W. line of said survey. Thence south a number of varas sufficient to make 200 acres of land."

Some time after this lease was executed the grantor had an office plat of his land made up in which the 200 acres covered by the lease was designated, and the balance of his land platted in blocks of varying sizes. He subsequently, without any agreement or consultation with the lessee of the 200 acres, took a surveyor out to the land and had the corners of the different blocks, as shown on this plat, marked with stakes. As shown on this plat and marked by the stakes set by the surveyor there was a slight excess in the 200-acre block. In a suit between a subsequent vendee of the owner and an assignee of the lessee it was held that the platting of the survey into blocks by the owner and the subsequent marking of the corners by him was not sufficient to show the establishment of a boundary line by agreement. We think the facts of these cases easily distinguish them from the instant case.

We think the allegations of plaintiff's petition in regard to the establishment of the agreed boundary line were sufficient to let in the evidence showing the fixing of the line by agreement. No exceptions were made to the sufficiency of the petition in this respect.

[4] There is no merit in appellant's contention that the verdict was insufficient to support the judgment, in that it does not definitely define or describe the boundary line. The line is definitely described in plaintiff's petition, and a general verdict in favor of plaintiff is a finding establishing the line as described in the petition, and is sufficiently definite to support a judgment establishing the line as claimed by plaintiff.

[5] The fact that in addition to the description of the line given in the petition the judgment gives the variation at which the line is run and other data shown by the undisputed evidence identifying the line described in the petition does not make it obnoxious to the rule, which requires the judgment to follow the verdict.

We think the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.