388 P.2d 64

Katharine M. ALSTON and Republic Supply Company, a corporation, Plaintiffs-Appellees,

v.

J. A. CLINTON, Defendant-Appellant,

Black, Sivalls & Bryson, Inc., Plaintiff-in-Intervention-Appellee.

No. 7305.

Supreme Court of New Mexico.

Dec. 30, 1963.

Phelps & Norwood, Roswell, for appellees Alston and Republic Supply Co.

L. George Schubert, Hobbs, for appellant.

Kermit Nash, Hobbs, for Black, Sivalls & Bryson, Inc.

CARMODY, Justice.

In 1928, the entire south half of Section 34, Township 18 South, Range 38 East, New Mexico Principal Meridian, was dedicated and platted as the Town of Hobbs. Shortly thereafter, a 230-foot right-of-way traversing the half section was conveyed to Texas-New Mexico Railway Company. The right-of-way description was tied to the west line of Section 34, being 215 feet east of the line. By the original plat and the amended plat thereafter filed and accepted, the entire half section was laid out with streets, alleys, lots and blocks, which showed that the various blocks immediately east of the railroad right-of-way line were bounded on their east by Leech Street and to the west by the railroad. Generally, each of these particular blocks contained eighteen lots, nine on each side of a dividing alley which ran east and west from Leech Street to the railroad. Each lot was twenty-five feet in width. On paper, the plat appeared to be ideal, but unforeseen circumstances were to alter the supposed perfection of the engineer's plat. This came about when those who actually laid out the streets and alleys on the ground did so by utilizing the east line of the section as a point of beginning, not the west line to which the railroad was tied. Ordinarily, such procedure would cause no difficulty;

but this time it was to result in the present litigation, because the particular half section was not a normal section of 5,280 feet in width from east to west, but was instead approximately 5,300 feet wide. Thus, instead of the blocks being 225 feet from Leech Street to the railroad (nine lots at 25 feet each), the actual distance from Leech Street to the railroad was approximately 245 feet. So, are the lots more than 25 feet, or is there a strip of land adjoining the railroad on the west which is still owned by the successor of the original dedicator? The overage is not exactly 20 feet as to all of the blocks in the dedication, inasmuch as it varies from slightly under 15 feet to about 25 feet in the area involved, because of other surveying errors; nevertheless, the amount is of no consequence insofar as it has any effect upon our disposition of the case. The discrepancy probably could have been easily corrected in 1930 when Hobbs had a population of only 598 people, but today, with the city being an extremely important oil center and having a population of nearly 30,000, a 20-foot strip one-half mile long, bordering on the railroad, would obviously have great value.

It was not until 1957 that the error was discovered, and at that time the defendant Clinton had the strip assessed for taxes for the five preceding years and paid the taxes thereon. The plaintiffs had at all times paid taxes on a lot-and-block basis, and had erected improvements on portions of the property adjoining the railroad right-of-way.

The case before us is a suit to quiet title, brought by four separate parties who own either entire blocks or portions of blocks lying between Leech Street and the railroad. No attempt was made to join as parties any of the other owners of lots or blocks bordering on the strip, nor were those joined as parties who owned either single or multiple groups of lots in the blocks in which one or more of the plaintiffs owned less than the whole block. Clinton, the sole defendant, is the successor in interest to the Hobbs Townsite Company, which originally owned the half section, and had sold to either the plaintiffs or their predecessors.

The trial court quieted title in the various plaintiffs to the lots and blocks claimed by them as against the defendant, without specifying the actual size of the lots or blocks. In addition, the decree contains the following provision:

"ORDERED, ADJUDGED AND DECREED that the tiers of nine lots in each of the blocks hereinabove described extend all the way from Leech Street on the east to the Texas-New Mexico Railway right-of-way on the west, regardless of the fact that the distance between such lines may be more than 225 feet, but this decree is without prejudice to any claim of any

person who is an owner of a lot in any block mentioned and who is not a party to this action, to share ratably in such excess footage; * * *."

The defendant appeals, claiming that the trial court exceeded its jurisdiction in two respects, (1) that the decree was, in effect, a declaratory judgment and therefore improper in a suit to quiet title, and (2) that there was an absence of indispensable parties, i. e., the owners of other lots in the blocks in litigation.

As nearly as we can understand defendant's position as to the first ground, it would seem that the defendant urges that the court was bound by the courses and distances set out in the plat as to the size of the lots and blocks, and was not at liberty to consider any overage. We do not feel that this argument has merit. It would not appear that the trial court did anything other than quiet the plaintiffs' title as against the claim of the defendant. Plaintiffs had alleged that they were the owners of certain property, describing the same by lots and blocks. The defendant, by her answer, admitted that she claimed adversely to the plaintiffs. The only property in issue under the pleadings was the ownership of the 20-foot strip adjacent to the railroad. Plaintiffs claimed it was included in the blocks between Leech Street and the railroad, and the defendant denied it. It was therefore a question of fact for the court to determine the exact identity and location of the property. This is all the court did, when it determined that all the land from Leech Street to the railroad was within the block description. See Sunmount Co. v. Bynner, 1931, 35 N.M. 527, 2 P.2d 311; and United States v. State Investment Company, 1923, 264 U.S. 206, 44 S.Ct. 289, 68 L.Ed. 639.

The court merely interpreted the evidence before it and applied the general rule that monuments control courses and distances. See Sunmount Co. v. Bynner, supra, and cases cited therein.

The defendant relies upon Otero v. Toti, 1928, 33 N.M. 613, 273 P. 917; Petrakis v. Krasnow, 1949, 54 N.M. 39, 213 P.2d 220; and Lanehart v. Rabb, 1957, 63 N.M. 359, 320 P.2d 374, in support of her position. However, these cases are not in point. Otero and Petrakis involved an attempt to establish a constructive trust in a suit to quiet title, and in Lanehart an effort was made to obtain an accounting in such a suit. We held that such action was not permissible in a statutory suit to quiet title. In the instant case, the court merely determined the boundaries, and this is proper as ancillary to the equity jurisdiction involved in a suit to quiet title. Murray Hotel Co. v. Golding, 1950, 54 N.M. 149, 216 P.2d 364; Nickson v. Garry, 1947, 51 N.M. 100, 179 P.2d 524; and Kaye v. Cooper Grocery Company, 1957, 63 N.M. 36, 312 P.2d 798.

■ We therefore pass to the claim that there was an absence of indispensable parties. In this connection, the evidence discloses that lots 9 and 16 of the various blocks are the two lots which the court determined to have a common boundary with the railroad. Thus, these lots are the only ones which are truly affected by the dispute. Although the outcome thereof, under the court's decree, may in the future become of some benefit to the other lots, the owners of which were not before the court, however it was of no concern to the defendant, having been found to have no right to the property, whether or not the other owners were joined as parties. From a practical standpoint and contrariwise, even if the defendant had been shown to have title to the strip involved, the joinder or non-joinder of other lot owners would be of no consequence. The ultimate effect of the trial court's decision was to determine that the railroad right-of-way was the westerly boundary of lots 9 and 16. The court quieted only plaintiffs' titles to the described lots and blocks—it did not declare that the individual lots contained any fixed number of feet. If a plaintiff had sought to have a determination of the size of its lots, then it follows that it would have been necessary to have had all of the owners before the court, but this was not the relief sought. Each of the plaintiffs owned at least either lot 9 or lot 16, or both, and therefore had an interest upon which their

suit could be based, and, in so doing, relied upon the strength of their own title, not the weakness of that of the defendant. This is in accord with our rulings many times stated, particularly in Abeyta v. Tafoya, 1920, 26 N.M. 346, 192 P. 481, and Union Land & Grazing Co. v. Arce, 1915, 21 N.M. 115, 152 P. 1143, cited by defendant.

The trial court recognized in its decree that it had no power to apportion the overage between the plaintiffs and any others who claimed an interest in any of the lots in the blocks in controversy and who were not made parties. Should the court have refused to grant any relief until all possible claimants of interest in the various lots were before the court? We think not. Plaintiffs had the right to have a determination that their interest, however large or small it might be, was superior to that of the defendant. We do not see how in this situation there was any necessity for additional parties to be brought in, and, in particular, we do not believe any rights of the defendant were jeopardized. Although the effect of the court's decree is that each of the tiers of nine lots contained more than 225 feet, the very able trial judge carefully did not quiet plaintiffs' title to any fixed number of feet per lot, nor determine the number of feet in any lot.

Defendant relies on Hoffman v. Van Duzee, 1937, 19 Cal.App.2d 517, 65 P.2d 1330. However, reliance thereon is mis-

placed, because although the court did mention the failure to have all the parties before the court, the decision was actually based upon the fact that the evidence was not sufficient to warrant a variance from the description given in the plat.

We note also Van Deven v. Harvey, 1960, 9 Wis.2d 124, 100 N.W.2d 587, which involved an overage and where the Supreme Court of Wisconsin approved the apportionment rule and allowed the overage to be divided among the various lots, even though all the owners were not parties. However, the case is to be distinguished, both factually and legally, from that before us.

■ The apportionment rule, as generally applied throughout the United States, directs that any excess or deficiency is to be borne by all of the lots, in proportion to their area. See Anno. 97 A.L.R. 1227 and cases cited therein. The rule is subject to an exception, however (and this is apparently the situation with which we are confronted), where to grant complete apportionment would encroach upon established streets, Williams v. City of St. Louis, 1894, 120 Mo. 403, 25 S.W. 561; Ditty v. Freeman, 1959, 55 Wash.2d 306, 347 P.2d 870; or, insofar as possession has fixed the limits, Hillside Cotton Mills v. Bartley, 1923, 156 Ga. 271, 119 S.E. 404; Brewster v. Bulow (Mo.1927), 296 S.W. 372; then the apportionment is restricted to the smaller area. How the rule or the exception thereto should be applied to the property in question must, of course, await the determination of a proper case in which the issues have been presented to the trial court. It is not before us at this time.

Despite the fact that it might have been preferable and perhaps simpler if all the parties had been before the court so that a complete adjudication as to the exact size of each lot could have been determined, nevertheless we do not feel this is required under our law. The other owners would have been proper parties, but they are not necessary or indispensable parties as contemplated by Rule 19(a) (§ 21-1-1(19) (a), N.M.S.A.1953). In a proper suit, the court can, no doubt, make such determination of the size of the lots as is required, after considering the exceptions to the apportionment rule abovementioned (see Anno. 118 A.L.R. 1400), if the same is applicable.

Although throughout this opinion we have consistently referred to the property described as lots and blocks, it has not gone unnoticed that one of the plaintiffs had title quieted in it of certain property which appeared on the original plat of dedication to be streets, but was subsequently vacated by the action of the Town of Hobbs. In view of our disposition of the case, it is not necessary to separately discuss any problem with respect to these vacated streets, and no question regarding the same is raised in the briefs.

347

The defendant's assertion that the trial court exceeded its jurisdiction in the respects discussed is without merit. The judgment will be affirmed. It is so ordered.

COMPTON, C. J., and NOBLE, J., concur.