OCTAVIA T. LECOMTE ET AL. V. GUSTAVE TOUDOUZE ET AL.

No. 6907.

1. **Immaterial Issues and Errors.**—In an action of trespass to try title depending upon the locality of a division line between the parties, the jury having found for the defense upon sufficient testimony upon an agreed boundary between the parties, errors in admitting or rejecting testimony, or in the charge upon the question of the true locality of the line between them, were abstract and harmless and are no grounds for reversal.

2. **Agreed Boundary Line.**—See facts held sufficient to establish by parol evidence an agreed boundary line, binding upon the parties. Such parol agreements as to the locality of division lines are not obnoxious to the statute of frauds, nor within the meaning of the statutes regulating conveyances of real estate.

3. Same.—By such agreements parties do not undertake to pass the title to real estate. but simply by agreement fix and determine the location of the thing that they already own, the purpose being to identify their several holdings and make certain what they regarded as uncertain.

4. Married Woman Bound by Her Acts.—A married woman participating in and agreeing upon a division line is, as to her separate property, bound by such act fixing a division line.

APPEAL from Bexar. Tried below before Hon. G. H. NOONAN. The opinion states the case.

*J. H. McLeary,* for appellants.—Leon Lecomte, the husband of Octavia Lecomte, who owns the land in controversy as her separate property, having no legal power or authority to bind his wife by a verbal agreement to a boundary line, the evidence of any such agreement on his part should not have been admitted over the objections of the plaintiff. Rev. Stats., art. 2851; Sayles' Civ. Stats., pp. 880, 881; Railway v. Robards, 60 Texas, 547, 548.

*Denman & Franklin,* for appellees.—The husband has the legal right to agree upon a boundary line between land owned by his wife as her separate estate and adjacent lands when the boundary between said lands is in dispute, and the wife is bound by such agreement. Besides, the facts show that plaintiff's wife expressly agreed to the compromise boundary line. George v. Thomas, 16 Texas, 89; McArthur v. Henry, 35 Texas, 816.

FISHER, JUDGE, *Section B.*—This is an action of trespass to try title and for damages, brought by appellants against appellees to recover a strip of land lying between the farms of the parties, and for rents and profits, and damages for timber destroyed, in the sum of $650, and praying for an injunction to stay waste, etc. Defendants pleaded want of equity in bill, etc.; and also pleaded the statute of limitation of three, five, and ten years; and that plaintiffs have taken a part of defendants' land; and pray for rents, profits, etc. Plaintiffs also claim title by ten years occupancy of the land in controversy, and also plead the three and five years statutes of limitation. Defendants further plead that the boundary line was settled by a verbal agreement between the parties and run out by a surveyor; and the suit finally resolved itself into a controversy concerning a boundary line.

The jury found the following verdict: "We the jury find from the evidence that the line established by County Surveyor Locke was agreed upon by all parties, and find in favor of defendant."

The land in controversy is a part of the Manuel De Luna grant, situated on the south bank of the Medina River. The plaintiffs claim so much of the De Luna grant as was not previously sold by Lecomte De

Watine, the father of plaintiff Leon Lecomte, and the former owner of the survey, under a decree of partition of the estate of Lecomte De Watine rendered in 1870, by which decree about 3000 acres of the De Luna survey was awarded Leon Lecomte. Leon Lecomte is the husband of plaintiff Octavia T. Lecomte. She holds under a deed from Henry Toudouze, who had previously purchased from Leon Lecomte. There is not in the decree of partition any description of the De Luna grant, nor is there in any of the deeds in plaintiffs' line of title any description of the land given, except that it is bounded by other surveys (naming them) and by the Medina River. The field notes of these other surveys are not in the record. It is admitted that Lecomte De Watine is the common source. November 6, 1851, Lecomte De Watine sold to E. T. De Curzen a part of the De Luna survey. The calls in the deed begin, "at the corner on the Medina River which is the terminus of the line separating my ranch from the property of Dn. Domingo Losoya; thence running down said river so as to include all of the low ground or bottom land which fronts on said river at that place; thence running back a line parallel with the said before mentioned line so as to contain within said lines the quantity of 400 acres." The Losoya grant is immediately west of the De Luna, and the corner on the Medina called for in the above deed is the common corner of the two grants. The field notes and boundaries of the Losoya are not given.

The controversy in the case is concerning the location of the east line of the 400 acres survey described in the deed from Lecomte De Watine to De Curzen. Gustave Toudouze holds under De Curzen by deed that conveys the same land described in the deed to De Curzen. The common line between the De Luna and Losoya grants runs back from the Medina River in a southwesterly course about one-fifth the distance of the common line; then for a short distance turns and runs in a southeasterly direction. Then the line—that is, about four-fifths of the common line of the two grants—runs back in a southerly direction to the back line of the grants. It will be seen from this that the common line between the Losoya and the De Luna runs back from the Medina River in an irregular course. The contention of the appellants is that the parallel line called for in the De Curzen deed should run parallel with the short irregular line of the common line between the Losoya and De Luna grants. Appellees contend that the parallel line called for in the deed should run not parallel with the short irregular lines, but should run parallel with the main or long common line between the two grants. Appellees further claim that in order to get all the bottom or low ground which fronts on the river as called for in the deed the line must run as they claim it, and claim that they and appellants, by a verbal agreement, fixed the line between them about in the position as claimed by appellees. This agreement was made in 1884.

Appellants claim that long previous to the bringing of suit they were in possession of the lands, and are entitled to hold the same by limitation.

Appellants contend that the court erred in refusing to give charges requested by appellants presenting the issues of limitation, and in refusing to inform the jury as to the legal effect of the calls in the De Curzen deed as determining where and how the parallel line should run; and erred in leaving it to the jury to ascertain what was meant by "parallel lines" as stated in the deed; and also erred in refusing, upon request of appellants, to charge that the call for quantity in the De Curzen deed was the controlling. call.

The court in its charge submitted the issues of agreed boundary and the question of boundary as raised by the reference to the calls in the deeds offered in evidence, and permitted them to look to the deeds and maps in evidence and the circumstances to ascertain the boundaries of the lands conveyed; and further instructed them, that if the land conveyed to De Curzen was 400 acres to run in parallel lines with the Losoya and De Luna grants, to find for the plaintiffs. The court refused to charge on limitation.

We think the court properly left it to the jury to ascertain what land was intended to be included in the calls of the deeds. It appears that the appellants were in possession of some of the land in controversy such length of time as would create a bar under the ten years statute of limitation. But in looking to the evidence we can not determine with certainty as to what portion of the lands their possession relates. If they seek protection under the statute, the burden is on them to fix the extent of their possession. The three and five years statutes of limitation under the facts of this case could have no application.

There are other assignments that complain that errors were committed upon the trial in the rejection and admission of testimony. The questions raised by these assignments, and those of the refusal of the court to give the charge in the particulars that we have considered, are deemed by us unnecessary of consideration in disposing of this case. If the court did in any of the particulars complained of in these assignments commit errors, as we conclude that the verdict of the jury on the issue of agreed boundary is supported by the evidence and that it must stand, then these errors are harmless and would not result in any injury to the appellants. If the court had given the charge requested by appellants, and had agreed with them in the admission and exclusion of evidence, no phase of the case would have thereby been presented that would have likely influenced the jury to reach a different result than their finding in appellees' favor as to the agreed boundary. If the action of the court in the particulars complained of are errors, they are simply so in the abstract and could not have affected the result. Beauchamp v. Railway, 56 Texas, 243; Hussy v. Moser, 70 Texas, 45; Smith v. Bank, 74 Texas, 457.

Admit that the issues raised by the refused charges and the excluded evidence were proper to be submitted to the jury, and that they could have regarded the facts and issues thereby presented as proved, still the finding of the jury on the question of agreed boundary may be perfectly consistent with the truth of such facts, and permitted to stand. Suppose that the rejected evidence tended to prove the location of the line where claimed by appellant as he contends and according to the field notes; suppose the evidence tended to prove the issues raised by the plea of the ten years limitation, or any other statutory period of limitation, leaving the line unsettled; suppose the evidence in the record tended to establish the line as claimed by appellants, and that the call of the De Curzen deed is entitled to the construction they place upon it. The existence of all these facts would not preclude the existence of the agreed boundary. They may all be true and the agreed boundary exist as found by the jury.

This brings us to the consideration of the facts with reference to the agreed boundary. Witness Locke, county surveyor of Bexar County, testifies that about March 21, 1884, Leon Lecomte, one of the plaintiffs, requested him to run a division line between him and Toudouze. He at first declined to do so, because, as he told Lecomte, there had been a row between Lecomte and Toudouze, and they had refused to let his deputy run the line. Whereupon Lecomte replied that they had agreed among themselves, and they simply wanted Locke to go down and run the line, and handed to witness a note to this effect from Toudouze. Locke went out in a few days to run the line, and found Lecomte and Toudouze at the house of the latter. They stated to the witness that they had settled all their differences and had agreed on how he should run the line. They went out to run the line, and he started to begin at a point lower down the river than a certain pecan tree; whereupon Lecomte showed him a certain tree to commence from, and he ran from that tree parallel with the main line of the De Luna survey to where it intersected the Corpus Christi road. To continue on this line would have taken some of Lecomte's improvements. The parties then told him that they had agreed to run around the improvements, and he ran the line so as to leave Lecomte his improvements. They all appeared to be perfectly satisfied, and when he set the last peg at the end of the line he asked both Lecomte and Toudouze if they were satisfied with the line as run, and they replied yes. When the witness was surveying the line the parties showed him where they agreed to put the line, and he ran it as directed.

Witnesses De Heimel and Neilly and defendant Gustav Toudouze testified the same in substance as witness Locke as to the agreed line. Toudouze further testified, that a few days before Locke made the survey Octavia Lecomte (plaintiff) came to his house and requested him to go with her to her house and have an agreement with her husband and

herself settling all differences between them about the boundary line. He agreed to go, and as they walked along to her house they passed across the land in dispute, and she said: "Father, we have determined to give you back your land, but you see we have made improvements on some across the Corpus Christi road, and it will be hard on us to lose them." "I told her we would run the line from the river until it reached the road, and then we would turn the line along the road so as to leave them their improvements. She said this was perfectly satisfactory, and thanked me for the concession. When we arrived at the house we had a talk with Leon Lecomte and there agreed upon how the line should be run, without, however, at that time going over the line, and agreed that we would at once send for Locke to come out and survey and mark it out. I proposed to send my son for him, and Lecomte said no, he would go, but that I had also better send a note so Locke would be sure to come. Lecomte wrote the note for me and carried it to Locke. In a few days Locke came out and ran the line, as testified to by him, so as to leave the Lecomtes their improvements [as he and witness had agreed] with them. Lecomte was along when the line was being run and agreed to it, and they both expressed themselves as satisfied. In a few days Lecomte moved his fence back from the land in dispute and put it along the Corpus Christi road on the line as surveyed by Locke to where the survey stopped." Witness at once built his fence along the line agreed upon from the river to the Corpus Christi road. While he was building the fence the plaintiffs were both at home and knew what was going on, and made no objection.

This agreement was made in March, 1884, and the fences remained as they were put by the parties immediately after the agreement, and it seems from the evidence the land remained in possession of each party respectively up to the fence. The suit was brought about eighteen months after the agreement.

Appellants contend that this evidence is not sufficient to establish an agreed boundary between the parties, because the land in controversy is the separate property of Mrs. Lecomte, and that the husband Leon Lecomte had no legal authority to make any agreement with reference to the boundary that would conclude her, unless it is shown that she acquiesced in the line agreed upon, and contend that the facts do not show an acquiescence upon her part in the line agreed upon. Appellants also asked a charge to this effect, which was refused.

In our opinion this presents the important question in the case. It can not be contended that the facts do not show an agreed boundary. Because the facts in the record tending to establish such agreement are more conclusive and certain in their force and effect than are usually found in cases of this character, where the courts in passing upon the question have repeatedly held the facts sufficient to prove the agreed line. An oral agreement between adjoining owners establishing a di-

viding line between their lands and a parol partition of lands are held not to be prohibited by the statute of frauds, nor are they within the meaning of the provisions of the law that regulate the manner of conveying real estate.   Aycock v. Kimbrough, 71 Texas, 333; Wardlow v. Miller, 69 Texas, 398; Cooper v. Austin, 58 Texas, 496; Stuart v. Baker, 17 Texas, 420; George v. Thomas, 16 Texas, 89; Houston v. Sneed, 15 Texas, 309.   The reason of this rule evidently is based upon the idea that the parties do not undertake to acquire and pass the title to real estate, as must be done by written contract or conveyance; but they simply by agreement fix and determine the situation and location of the thing that they already own; the purpose being simply by something agreed upon to identify their several holdings and make certain that which they regarded as uncertain.   In ascertaining the effect of these parol agreements establishing boundary lines we do not understand that it is necessary in order to give the agreement vitality that it should be supported by acquiescence or acts from which an estoppel may spring; for if the agreement is made under circumstances free of facts that would authorize a court of equity to set it aside it must stand, although the parties may have been mistaken in their belief that the line agreed upon approximates the line of the survey where it is really found to exist.   Cooper v. Austin, 58 Texas, 496.

It is unnecessary for us in this case to express an opinion concerning the validity and effect of a parol agreement made by the husband alone without the consent of the wife as affecting her separate property. Some of the cases previously cited seem to recognize his power in this respect to so bind her.   The evidence in this case satisfies us that the plaintiff Mrs. Lecomte was a party to the agreed boundary, and fully understood its location and expressed her consent to its establishment. The evidence of her father, Toudouze, connecting her with the agreement is not denied by her.

We report the case for affirmance.

*Affirmed.*