COOK'S HEREFORD CATTLE CO. et al. v. BARNHART.†

(Court of Civil Appeals of Texas. San Antonio. April 24, 1912. Rehearing Denied May 29, 1912.)

1. FRAUDS, STATUTE OF (§ 70*) — VERBAL AGREEMENT AS TO BOUNDARY LINE.

While a verbal agreement for the settlement of an uncertain boundary line is binding between the parties, because no title is affected thereby, such an agreement was void, because it was a parol conveyance of land in violation of the statute of frauds, where the division line had been marked by a fence for more than 20 years and the fence, though not originally on the true boundary, had determined the legal boundary by limitations.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 112; Dec. Dig. § 70.*]

2. ADVERSE POSSESSION (§ 106*)—TITLE—EFFECT.

A title by limitations is as good as one acquired by a conveyance through a regular chain of title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 604–623; Dec. Dig. § 106.*]

3. ADVERSE POSSESSION (§ 100*)—EXTENT OF POSSESSION.

The possession of a part of a tract of land under a deed defining the boundaries of the whole tract was not possession of another part within the peaceable adverse possession of another.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 547–574; Dec. Dig. § 100.*]

4. ADVERSE POSSESSION (§ 113*)—EVIDENCE—ADMISSION.

Where adverse possession had ripened into title, no admission made thereafter by the party having such title as to the nature of her present possession could affect her title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 669–681; Dec. Dig. § 113.*]

5. ADVERSE POSSESSION (§ 36*)—ACQUISITION OF TITLE—INCLOSURE.

One who used, cultivated, and enjoyed land peaceably and adversely for 10 years acquired title thereto, regardless of the ownership or existence of any fence inclosing the land.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 139–143; Dec. Dig. § 36.*]

6. ESTOPPEL (§ 55*)—INVALID PAROL AGREEMENT—PURCHASER.

Where a purchaser did not rely upon an invalid agreement between his grantor and an adjoining owner as to the location of an undisputed boundary line, the adjoining owner was not estopped from claiming, as against the purchaser, that title which was hers independent of the agreement.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 136–141; Dec. Dig. § 55.*]

Appeal from District Court, Frio County; J. F. Mullally, Judge.

Trespass to try title by Alice B. Barnhart against the Cook's Hereford Cattle Company and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Mason Maney, Magus Smith, and R. W. Hudson, all of Pearsall, for appellants. Ed. H. Yeiser and H. B. Barnhart, both of Austin, and S. T. Phelps, of Pearsall, for appellee.

FLY, J. This is an action of trespass to try title instituted by Alice B. Barnhart, appellee, against Cook's Hereford Cattle Company and others, to recover a certain tract of land, a part of the Pedro Flores Morales survey No. 1,414 or parts of A. B. & M. survey No. 1, patented to Louis Unger, containing 51 acres of land. The Cattle Company answered by a plea of not guilty, and the other appellants joined in that plea, and, in addition, claimed title from that company, and prayed for judgments on their warranty. A jury trial resulted in a verdict and judgment for appellee against all the appellants, and against the Cattle Company in favor of the other appellants on their warranties. There was evidence which tended to show that appellee had been in peaceable, adverse possession of the land in controversy, cultivating, using, and enjoying the same for a period of more than 10 years prior to a time in 1910, when a certain boundary fence that had inclosed the land in appellee's inclosure was removed by the Cattle Company. There was also evidence tending to show a verbal agreement upon the part of appellee that the fence could be moved and placed on the line now claimed by appellants to be the true boundary line between the Morales tract on the north and the lands of appellants on the south.

Under the statement of the facts herein given, the court, after defining peaceable and adverse possession, instructed the jury: "Now, if you believe from the evidence that the plaintiff, Alice B. Barnhart, and her deceased husband, have successively had and held peaceable and adverse possession (as those terms have been defined) of the land described in her petition, cultivating, using, or enjoying the same for any period of 10

years after said possession commenced and before the removal of the fence by the Cattle Company in 1910, and that she did not agree in 1906 with Mason Maney, as agent of the Cattle Company, that the fence might be removed and rebuilt, so as to exclude the land in controversy from her possession, and did not authorize her agent, Needham Smith, to so agree for her, then you are instructed that such possession was sufficient to vest title in the plaintiff by limitation, and you will return your verdict for plaintiff for the said land. You are further charged that if you believe from the evidence that plaintiff and her deceased husband successively had and held peaceable and adverse possession (as those terms have been defined) of the said land for any 10 consecutive years, cultivating, using, or enjoying the same prior to the month of March, 1906, then plaintiff acquired full title, and you will find your verdict for her for the said land, although you may further believe from the evidence that plaintiff during said month of March, 1906, did agree with Mason Maney as agent of the Cattle Company that the fence might be removed and rebuilt so as to exclude said land from her possession, or that she did authorize her agent, Needham Smith, to so agree for her."

[1] The whole charge herein copied is assailed through the first assignment of error; the only proposition thereunder being: "Adjoining landowners can agree by parol as to the location of a partition line between their respective lands, and be bound thereby, regardless of whether title to the same was acquired in either party to such agreement by limitation or otherwise." It has been repeatedly held in Texas that a boundary line between tracts of land owned by different persons may be established by the parol agreements of such owners, and that such agreements will not be obnoxious to the provisions of the statute of frauds, in regard to the conveyance of real estate. Houston v. Sneed, 15 Tex. 307; Coleman v. Smith, 55 Tex. 254; Hefner v. Downing, 57 Tex. 576; Cooper v. Austin, 58 Tex. 494; Johnson v. Johnson, 65 Tex. 87; Le Comte v. Toudouze, 82 Tex. 208, 17 S. W. 1047, 27 Am. St. Rep. 870. As qualifying and explaining the rule, it is held that there must doubt exist as to the true division line, and, where the parties know the divisional line, such an agreement would not be binding, because it would be a parol conveyance of land and prohibited by the statute of frauds. Harn v. Smith, 79 Tex. 310, 15 S. W. 240, 23 Am. St. Rep. 340.

Under the facts in this case, the parties, as well as every one else, knew the divisional line between the two tracts, for it was plainly marked by a fence that had occupied its position for more than 20 years. There might have been a doubt as to the true boundary line between the two tracts, but there was absolutely no kind of doubt as to the location of the true divisional line between the land owned by appellee and that owned by appellants, and the whole object to be attained by the agreement was not to fix a boundary, but to obtain title to 51 acres of land to which appellee had a title by limitations. It amounted to a parol conveyance of the land, and was within the scope of and obnoxious to the statute of frauds. Verbal agreements for the settlement of an uncertain boundary is binding between the parties because no title is affected thereby, as neither could be said to have title to the disputed tract, and neither had any evidence of title, but such verbal agreement cannot be sustained where the title is clearly in one of the parties. Browne, Stat. Fraud, § 269.

[2] The title that appellee had acquired to the 52 acres of land by limitation was just as full, strong, and complete as though it had come to her through a regular chain of title, and could no more be conveyed by an oral transfer than it could have been had it been evidenced by a record title. "The statute has given to the adverse, continuous, hostile possession, shown by the proof in this case, a certain effect. It results in the consummation of a title—a title as full and absolute as any other perfect title." Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104. In the case of Cannon v. Oil Company, 138 S. W. 803, the facts were that a party whose title to land had been perfected by limitation was requested to move her line to a certain place and assented, but the court held: "It goes without saying that a mere verbal relinquishment of her claim to the land, made after title had vested in her by limitation, would not affect such title."

Verbal agreements as to unknown boundaries are permitted in the interest of peace and tranquillity, and to prevent strife and dissension among the citizens, for, as is well known, there is no more prolific breeder of trouble between neighbors than a disputed boundary, but the principle cannot be stretched so as to be the means of divesting one party of his title to land and investing it in another. There was no contest or dispute as to the boundary line between the Cattle Company and appellee, no difficulty whatever in ascertaining it. The county surveyor testified that the west corner of the Morales survey is still on the ground showing the original bearing tree, and the north corner of the A. B. & M. No. 2 is on the ground. There was no doubt as to the correct location of the south line of the Morales and the north line of the surveys south thereof. An agreement, therefore, to fix the line as indicated by the field notes and objects on the ground amounted to a parol conveyance of 51 acres of land by appellee to the Cattle Company. The court properly charged the jury that the parol agreement did not divest

appellee of her title. The agreement sought to be proved by appellants was not one to settle a boundary dispute, but to convey land by parol, an agreement to donate 51 acres of land to the Cattle Company.

The second assignment of error complains of the refusal of the trial judge to give a requested charge embodying the contention that the agreement to fix the boundary in a certain place and the placing of the fence there would entitle appellants to a recovery, and was disposed of in the consideration of the first assignment. Appellants seek by a proposition to raise the question of estoppel under the assignment, but estoppel was not contained in the rejected charge and the question cannot be raised, even if there had been any evidence to sustain it.

[3] The fourth assignment of error assails the sufficiency of the evidence to sustain 10-year limitation; the first proposition being: "The possession of any part of land under a deed defining its boundaries is of all the land within said boundaries." That proposition would be correct if it were not for the fact that part of the land within the boundaries was in the peaceable, adverse possession of another who was laying claim to it, as was shown in this case. It is asserted in the second proposition that the "least whisper of the acknowledgment" of the title of appellants would preclude appellee from a title by limitation, but appellants fail to show that appellee made the "whisper." The evidence showed a consistent claim to and possession of the land by appellee and her husband for over 10 years, that they used and enjoyed it adversely to every one, and appellants do not claim that the agreement as to the fence, after the title was perfected, cast any reflection on the adverseness of the prior possession.

[4] No admission at that time could affect a possession that had for more than 10 years been consistently adverse. The hearsay evidence of Mrs. Smith, which was introduced by appellants, tended to show, as to Mrs. Barnhart, that her attorney, W. M. Walton, told Mrs. Barnhart that he did not see any complaint, why she should have any complaint coming, that "it was not her fence."

[5] It would not matter who owned the cross fence that assisted in inclosing appellee's land, or whether any fence inclosed it, if she and her husband claimed the land as theirs and used, cultivated, and enjoyed it peaceably and adversely for 10 years, being in "actual, continuous, visible, notorious, distinct and hostile" possession, and it became her land. Mrs. Barnhart testified: "I have claimed the property inclosed in the pasture as my own since Mr. Barnhart's death. He claimed it during his lifetime. Mr. Barnhart knew it was his land, and mentioned to me a time or two that the title would be secure by limitation in a short time—the whole of it. It has been my intention since his death to claim that property adversely to all parties. No one during the time that my husband and myself have had this property has attempted to exercise any ownership or possession of it except ourselves."

[6] The agreement as to the line was claimed to have been made in 1906, but no attempt was made to move the fence until 1910; the only reason attempted to be given for the delay being, "We don't do things on a ranch until we get to them." The land in dispute was being cultivated by appellee in 1906, and was so cultivated up to the end of 1910. This suit was instituted on December 16, 1910, the fence having been moved in June, 1910. The Cattle Company sold the land to the other appellants in the fall of 1910. The appellants who bought from the Cattle Company knew that the land in controversy had been inclosed in the Barnhart pasture, and it was being used and cultivated by them, and there is nothing in the record that indicates that they or either of them knew of any agreement as to the boundary line. Henry Maney testified: "I looked at my land before I bought it. I saw the old pasture lines, but I never made any inquiry. I got a warranty deed and I knew I would be safe. I saw the fence was moved back, but I did not know whether it was Mrs. Barnhart's or not." He is the only one of the appellants that made any improvements, and that he was not led into so doing by any agreement is apparent. The principles of estoppel would have no application to him.

The judgment is affirmed.