### ZEPEDA v. ESPARZA. (No. 8114.)

Court of Civil Appeals of Texas. San Antonio.
Feb. 6, 1929.

Rehearing Denied May 1, 1929.

Fausto Yturria and E. Polk Hornaday, both of Brownsville, for appellant.

E. T. Yates, of Brownsville, for appellee.

FLY, C. J. This action was to obtain a writ of injunction to restrain appellee from trespassing upon appellant's land, and from molesting appellant while he is engaged in constructing a certain fence, described in his petition. A temporary writ was granted, and upon a hearing the injunction was dissolved and it was adjudged that appellant be required to remove his fence from where it is standing to the true boundary line as agreed upon by the parties as the boundary line between their tracts of land.

The contest was as to the boundary line between appellant's tract of land, known as porcion P. and Q. on the east and west, and a tract of land owned by appellee and known as O and R. Appellee claimed that the disputed boundary line between the tracts had been orally agreed upon by the owners. The court has the following findings of fact in the judgment:

"And it further appearing to the court that the plaintiff owns the tracts of land designated on the official map of Cameron county, Texas, as tracts P and Q out of the San Pedro Carricitos grant in Cameron county, Texas, and that the defendant for himself and others owns the tracts of land that are designated on said official map in said county and state and in said grant as tracts O and R, tract O being located on the east side of said tracts P and Q, and tract R being located on the west side of said tracts P and Q, and it further appearing to the court that said lands were surveyed and partitioned by H. M. Field, more than thirty (30) years ago, but that the lines established by H. M. Field had become overgrown with brush and were not known to plaintiff and defendant; that plaintiff and defendant had fences along portions of their land, but that they did not know whether said fences were on said Field lines; and it further appearing that the plaintiff and defendant agreed to have V. L. Conrad survey their said lands and establish the said Field lines, which is the true line separating their said lands, and it further appearing that the plaintiff and defendant had said V. L. Conrad survey said land, and that the said V. L. Conrad established and reopened the said Field lines, which the plaintiff and defendant accepted and paid the said V. L. Conrad for his said services; and it further appearing to the court that small portions of plaintiff's land were inside the fence line of defendant, and that small portions of defendant's lands were inside the fence lines of the plaintiff, and it further appearing that neither plaintiff nor defendant had established a title by and under the statute of 10-year limitation to the portions of land inside their fences but beyond their respective Field lines; and it further appearing to the court that the defendant Willie L. Esparza has already moved his fence line on tract O north of the Military road back to the Field line established by said Conrad, but that the plaintiff has not moved his fence, according to his agreement, on to the true Field line on the west side of tracts P and Q, north of the Military road, and on the east side of tracts P and Q, south of the Military road, and that he has not permitted the defendant Willie L. Esparza to move his fence to the true Field line on the west side of tract O south of Military road, and it further appearing to the court that both plaintiff and de-

fendant know the location of the true lines between their respective tracts, which are the said Field lines as established by said Conrad on the ground."

Following the recitation of the foregoing facts, judgment was rendered in favor of appellee. We find that the facts recited are sustained by the statement of facts. The boundary line between the lands of the two parties was surveyed and marked at their instance, and the civil engineer swore that appellant's fence was not straight, and if a boundary had ever been fixed with the fence on it, it was crooked and incorrect. Appellant and appellee sought and paid for the survey, because they did not know their boundary lines. Appellee swore that the survey was made at the instance and request of appellant, and they orally agreed to put their boundary fences on the line as shown by the survey. By the survey appellant gained as much land on one side of his tract as he lost on the other. Appellant's fence across the resaca had not been built before the survey, but he refused to abide by the survey which he had initiated. The evidence offered by appellee sustains the judgment.

The only contention made by appellant is that a boundary between lands cannot be fixed by a parole agreement when "once there has been an old established line dividing the same lands heretofore." There was always, except for short intervals, a break in the fence of appellant at the resaca. Appellant had doubts as to the proper boundary line, no matter where his fences were placed, and was willing to pay a civil engineer to fix the true boundary line. No one knew the true divisional line between the tracts, and appellant's fences were placed in the land 30 years after a line between the tracts was run by a surveyor named Fields. His field notes are not plain, and there is no evidence to show that his field notes were followed in erecting the fence.

It was held by this court in the case of Cook's Hereford Cattle Co. v. Barnhart, 147 S. W. 662: "Verbal agreements as to unknown boundaries are permitted in the interest of peace and tranquility, and to prevent strife and dissension among the citizens, for, as is well known, there is no more prolific breeder of trouble between neighbors than a disputed boundary, but the principle cannot be stretched so as to be the means of divesting one party of his title to land and investing it in another." In that case, as declared by the court: "There was no doubt as to the correct location of the south line of the Morales and the north line of the surveys south thereof. An agreement, therefore, to fix the line as indicated by the field notes and objects on the ground amounted to a parole conveyance of 51 acres of land by appellee to the Cattle Company. The court properly charged the jury that the parol agreement did not divest appellee of her title. The agreement sought to be proved by appellants was not one to settle a boundary dispute, but to convey land by parol, an agreement to donate 51 acres of land to the Cattle Company."

The facts in that case present a different one from the facts in this case. The boundary line in the cited case had been clearly and definitely marked by the field notes of a surveyor, and there was no doubt or dispute as to its location. The appellee denied agreeing to the boundary claimed by the cattle company. No surveyor had been called in to fix another boundary line, and appellee was not disturbed in her possession of the land as fixed by her old boundary line for four years after the time the purported agreement as to boundary was made, and the first step taken by the cattle company was to tear down appellee's fence. The agreement in this case was made at the instance of appellant in 1927. There was no evidence to show that field notes of Field were followed when the crooked fence was built, and there were grave doubts in the minds of owners of lands in that vicinity as to the location of boundary lines. Appellant evidently entertained this doubt as to the boundary between him and Esparza. It cannot be presumed that a surveyor would locate a line as crooked as was appellant's fence. The survey was not made on the ground, but was an office survey. The fence was shown to be 138 feet off the Field survey. The evidence fails to show any attempt to follow the line fixed by Field. Appellant moved part of his fence to conform to the survey made by Conrad, but did not move all of it.

The judgment is affirmed.