## CITY OF WACO v. DARNELL. (No. 809.)

Court of Civil Appeals of Texas. Waco. June 27, 1929.

Rehearing Denied Oct. 17, 1929.

John McGlasson, Geo: W. Morrow, and Bryan & Maxwell, all of Waco (on motion for rehearing), for appellant.

Williams, Williams, McClellan & Lincoln, of Waco, for appellee.

BARCUS, J. Appellee instituted this suit against appellant to recover damages for alleged personal injuries sustained by her while riding in an automobile driven by another party, which collided with a stump alleged to have been situated on Cleveland street in the city of Waco. The cause was tried to a jury, submitted on special issues, and resulted in a verdict for $17,500, of which amount appellee, on motion for rehearing, remitted $7,500, and judgment final was entered for appellee by the trial court for the sum of $10,-000.

It is revealed by the record that many years ago a street or alley was left by the property owners between Fourth and Fifth streets in the city of Waco. The line on the north side of said street or alley was straight, and ran at right angles with Fourth and Fifth streets. The property on the south side of said alley or street, abutting same, belonged to Dr. Sears, and in building the fence along the north side of his property and the south line of said street, he built it crooked, and did not run same at right angles to Fourth and Fifth streets. The street or alley as left was 37 feet wide on Fourth street and 22½ feet wide on Fifth street. In the fence line of the Sears property was a bois d'arc tree, to which the fence was attached. When Cleveland was elected president of the United States, the officials of the city of Waco named said street, running between Fourth and Fifth, Cleveland street, and same has been so known and designated since that date, and has at all times been maintained by appellant as a street.

In 1918, the property on the Fifth street side was sold by the heirs of Dr. Sears, and shortly thereafter all of the fence that remained was torn down, and presumably the bois d'arc tree at said time was cut down, leaving a large stump, about 12 inches high. After the fences were all removed and the bois d'arc tree cut down, the then owner of the property, R. D. Roman, made preparation to build an apartment house on the side of the lot abutting Cleveland street. He started fixing the foundation, but was stopped by the city officials on their claim that the place where he was planning to build his apartment house took in part of Cleveland street, which belonged to the city. The city engineer made a survey of the street and the property adjoining, and prepared and filed a plat with the city, showing, according to said plat, that the city was entitled to a street 37 feet wide entirely across said block from Fourth to Fifth street. The plat filed by said engineer showed that the city claimed 14½ feet of city property was being taken by Mr. Roman on Fifth street, and running back in irregular shape to the rear of his property. After said survey was made, the mayor and the four city commissioners went with Mr. Roman and viewed the property, and they then and there agreed with each other on the street line, un-

der the terms of which said street was recognized as being 27½ feet wide on Fifth street, running back straight and at right angles to Fifth street to the rear of the Roman property; the city thereby taking part of the property claimed by Roman on Fifth street, and he taking part of the property the city claimed on the rear end of his lot. The effect of this agreement was to place the bois d'arc stump in question some 2 or 3 feet inside of Cleveland street. Appellant has maintained as the graded portion of Cleveland street a strip about 20 feet wide, the graded portion lacking about 6 inches of going to said stump.

In response to the special issues submitted, the jury found that the bois d'arc stump was situated on property both owned and controlled by appellant; that the officers of appellant knew of the conditions existing with reference to the location of said stump, and that it was negligence for appellant to leave the stump as it was; and that said negligence proximately caused appellee's injury. The jury further found that appellant failed to establish and maintain Cleveland street at a width reasonably safe for the public to travel, and that same was negligence, which was the proximate cause of the injury. The jury further found that the stump was so close to the traveled portion of Cleveland street that it was dangerous to those who used the street; that it was negligence for the city to fail to remove same, or erect a curb or railing near the same; and that said negligence was the proximate cause of the injury. The jury further found that neither the driver of the car nor appellee was in any way negligent at the time of the injury.

■■ Appellant, by several assignments of error, complains of the action of the trial court in permitting the witness Roman to testify with reference to the conversation he had with the mayor and city commissioners relative to the location of the street line, and the agreement made between him and the city officials locating said line, on the theory that it was an effort to pass title to land by parol. We overrule these assignments. The jury found that the stump in question was on property over which the city was exercising control at said time. Said testimony of Mr. Roman tended to show that he did in fact at said time dedicate that portion of the property on which the stump was located to the city of Waco for street purposes, and that the city, through its officials, then and there accepted same.

Said testimony was also admissible as tending to show that appellant, through its proper officials, and Mr. Roman, as owner of the abutting property, agreed upon and fixed the boundary line, which was in dispute between said parties; Mr. Roman claiming the boundary line was one place, and the officials of appellant claiming a different place. The effect of the agreement, as testified to by Mr. Ro-

man, which was not in any way contradicted or challenged by any of the officials. of appellant, was to either definitely on the part of Mr. Roman dedicate said property to appellant for street purposes, or fix the boundary line of the street. It was uncontradicted that, while the parties were discussing the location of the street line, and in connection therewith Mr. Seward, the city engineer, ran the line showing where the boundary of said street would run if same was placed 5 feet inside of what was claimed to be the old Sears fence on Fifth street and running back parallel with the north side of said street. As we understand the authorities, they uniformly hold that a disputed boundary line can be agreed upon and established by parol. 4 R. C. L. p. 126; Cook's Hereford Cattle Co. v. Barnhart (Tex. Civ. App.) 147 S. W. 662, and authorities there cited.

Appellant objected to the introduction of the testimony of the witness Snead with reference to the location of the bois d'arc tree as it existed some 20 to 40 years ago, on the theory that said testimony was too remote. We overrule this assignment. The witness had lived in that neighborhood from childhood until he was grown, and was familiar with the lines of the fences and the trees, and had since the lawsuit was filed examined the old stump, and his testimony tended to prove the location of the street lines, as well as the location of the stump.

Appellant, by various assignments and propositions, contends that the trial court was in error in overruling its special exceptions to that portion of appellee's petition which sought to hold it liable because of appellant having failed to open and maintain Cleveland street to a sufficient width to take care of the traffic, and that portion of the pleadings which sought to hold appellant liable for failing to remove the stump, and in submitting said issues to the jury, on the theory that said acts called for ministerial discretion on the part of the officers of the city with reference to the width the city will be required to open streets, and how much of the property owned by the city it can be required to use and maintain for street purposes. We overrule these assignments. The rule seems to be well established that it is a question of fact to be determined by the jury whether it is negligence for a city not to open all of the space that it has subject to its control for a street, as it relates to the importance of the street and the requirements of the traveling public.

Under the jury's finding, which is supported by the testimony, the stump in question was in the portion of the property which belonged to the city. The city was only using 20 feet of a possible 27½ feet for street purposes, and had left on the edge of the graveled portion of the street the stump in question. The city could have removed the stump, and could have graded the entire 27 feet, and permitted the general public to use same for street purposes. The record shows that the street in question served a very thickly populated residential section of the city as a cross-street. Under the facts and circumstances revealed by the record, it became a question of fact to be determined by the jury whether the city had negligently failed to widen said street and remove therefrom the stump in question. McQuillin on Municipal Corps. § 2742; 43 C. J. 1006, 1008; Dillon on Municipal Corps. (4th Ed.) §§ 1008 and 1016; 19 R. C. L. 1084.

Appellant assigns error to the action of the court in refusing to permit it to file a trial amendment after the testimony had closed. We overrule this assignment. The issues tendered by said trial amendment were as a matter of fact by a number of special issues submitted to the jury, namely, whether the negligent acts of the driver of the automobile or the negligent acts of appellee were the proximate and direct cause of her injury. The jury found against appellant on said issues. The record further shows that the trial amendment was not in response to any exceptions that had been sustained by the trial court to appellant's answer. Neither was it provoked by any testimony of appellant claimed to be a surprise, and no reason was given why the things contained in said trial amendment had not been contained in appellant's amended answer. The action of the trial court in granting or refusing permission to file a trial amendment after the close of the testimony will not be disturbed, unless it clearly appears that he has abused his discretion.

Appellant complains of the action of the trial court in refusing to set aside the verdict of the jury because of misconduct of the jury; the alleged misconduct being that the jury in their deliberations discussed the question of the attorney's fees that appellee would be required to pay in the event she recovered. We have carefully examined the entire record relative thereto, and overrule this assignment. It appears from the record that on motion for rehearing eight of the jurors testified, the other four not being available at said time. The jurors testified that, after they had been considering the case for a day or more and had agreed on the answers to all the issues submitted, except the one involving the amount of damages to be awarded, they took a vote thereon, each juror setting down on a piece of paper the amount he thought plaintiff was entitled to recover. These amounts ranged from $10,000 to $40,000. Thereafter one of the jurors, who had not before had experience in jury service, suggested that appellee would have to pay one-third or one-fourth of the recovery to her attorneys, and one or more of the other jurors suggested that the amount the attorneys would receive ranged from one-third to one-half. Thereupon two of the jurors, who had served on juries before,

made the statement that it was not proper for the jury to discuss or consider the question as to whether or not the attorneys would get any part of the recovery, and that they could not take said matter into consideration in arriving at their verdict, and thereafter the question of attorney's fees was not discussed in any way among the jury.

Seven of the eight jurors testified that said discussion, and the fact that the lawyers might get part of the recovery, had nothing to do with nor in any way influenced them in rendering the judgment which they did. The juror Peek testified that he had, during the first day, on some of the other questions, held out against rendering a judgment for appellee; that he finally agreed with the other jurors on all other issues; that the jury then took up the question of the amount of damages; that his first ballot was to give her $10,000; that as a matter of fact he thought she was clearly entitled to the $17,500 that was awarded. He testified, however, that, after he had voted for the $10,000, the question about the attorneys getting a portion of the recovery was for the first time discussed, and that said discussion partly influenced him in arriving at a verdict; that he figured, if they then gave her $15,000, that the attorneys would get one-third of it, or $5,000. His testimony was very conflicting and unsatisfactory in many details.

Appellee remitted on motion for rehearing $7,500 of the recovery, reducing same to $10,000, which was the amount that said juror testified he was willing to give and voted to give before any discussion of attorney's fees was made. The trial court heard all the jurors, and overruled appellant's motion for rehearing. We do not think the trial court abused its discretion in overruling said motion. Appellant relies largely upon the opinion written by Judge Critz, of the Commission of Appeals, in St. L. S. W. Ry. Co. v. Lewis, 5 S.W.(2d) 765, Id., 10 S.W.(2d) 534, where it was held that an error of the trial court could not be cured by a remittitur in the Supreme Court of $3,500 of an $8,500 judgment by reason of the alleged misconduct of the jury in discussing attorney's fees, and in discussing the fact that the appellant had offered to compromise the case and pay $5,000 damages. The application for a remittitur in that case was suggested and tendered for the first time in the Supreme Court, without any opportunity to hear the facts surrounding said matter, or to determine what, if any, effect the comments had on the jury which heard and tried the case. It appears affirmatively in the Lewis Case that the jury not only discussed the question of attorney's fees, but discussed at length the question of a compromise that had been offered by the railway company.

The facts in the present case, we think, are more nearly in line with and are controlled by the opinions written by Judge Critz in Inter-national Great Northern Ry. Co. v. Cooper (Tex. Com. App.) 1 S.W.(2d) 578, 579 and El Paso Electric Co. v. Whitenack (Tex. Com. App.) 1 S.W.(2d) 594. In the Cooper Case the error, as here, related to the misconduct of the jury in discussing attorney's fees, and, in addition thereto, discussing the doctors' bills. A verdict was rendered in said case for $15,000, and on motion for rehearing in the trial court a remittitur was filed of $7,500. Judgment final was then entered for the plaintiff for $7,500. Judge Critz, in writing the opinion in said case, affirming the judgment of the trial court, stated: "It is the settled law of this state that 'if, upon a consideration of the whole or the pertinent record, it is reasonably doubtful whether or not the improper conduct affected the amount of the verdict or the decision of any other material issue, the verdict should be set aside by the trial judge; if, in such a case, a new trial is not granted, there is an abuse of the discretion by the trial judge, and reversal becomes the duty of appellate courts.'"

In support thereof he cites a long array of authorities. He further states: "We believe that the law is equally as well settled that, where the portion of the verdict, tainted with misconduct, or improperly arrived at, is capable of definite and accurate ascertainment, and where the jury acted free from passion or prejudice, a remittitur of the portion so tainted or improperly arrived at will cure the error, and the part of the verdict free from the taint of misconduct and properly arrived at will be permitted to stand. The following cases directly and indirectly support this proposition." Then follows a long array of authorities. After quoting from several authorities, said opinion continues: "In the case at bar the issue of liability was conclusively shown. * * * The trial court heard evidence as to the amount of the verdict tainted with misconduct, and found that a remittitur of $7,500 would cover any possible portion of said verdict so tainted. * * * Certainly the misconduct could not be material after the part of the verdict affected by such misconduct is remitted."

In the case of El Paso Electric Co. v. Whitenack, supra, the opinion also being written by Judge Critz, the question of the misconduct of the jury in discussing attorney's fees was again considered, and said court again held that, where the trial court heard evidence relating to the misconduct of the jury in having discussed attorney's fees, and a remittitur was filed covering all portions of the verdict that could possibly be tainted by the alleged misconduct, that the judgment of the trial court in overruling the motion for rehearing by reason thereof would not be disturbed.' Peek was the only juror who claimed to have been in any way influenced by the remarks of the juror relative to attorney's fees. His testimony was so conflict-

ing and unsatisfactory that the trial court was authorized to give same very little weight. When a new trial is sought by reason of misconduct of the jury, article 2234 of the Revised Statutes of 1925 authorizes the trial court to hear evidence in support thereof, and, if it appears that the misconduct "be material," then a new trial should be granted. Under said statute a large discretion is lodged in the trial court. The weight of authority seems to be, and we think should be, that, unless it appears the trial court has abused its discretion in refusing to set aside the verdict of the jury because of its misconduct, same will not be disturbed by the appellate courts.

We have examined all of appellant's assignments of error and same are overruled. The judgment of the trial court is affirmed.