## HOUSTON OIL CO. OF TEXAS et al. v. SINGLETON et al.

### No. 2136.

Court of Civil Appeals of Texas. Beaumont.
Nov. 12, 1931.

Rehearing Denied Dec. 31, 1931.

Williams, Lee, Hill, Sears & Kennerly and Andrews, Streetman, Logue & Mobley, all of Houston, for appellants.

O. R. Sholars, of Orange, Geo. E. Holland and E. L. Nall, both of Beaumont, and E. L. Reid, of Orange, for appellees.

WALKER, J.

In Orange county, the John Harmon survey lies adjacent to and to the west of International & Great Northern section No. 8. When this suit was filed, appellees L. Singleton and Southern Land & Lumber Company owned the Harmon survey, and appellants Houston Oil Company of Texas, Southwestern Settlement & Development Company and its trustees, Republic Production Company, and Kirby Lumber Company owned section No. 8. On February 19, 1896, the Harmon survey was owned by J. H. Singleton, under whom appellees hold, and section No. 8 by New York & Texas Land Company, Limited, under whom appellants hold. At that time, a dispute arose between these owners as to the location of the boundary line between the two surveys. Singleton claimed that the Harmon extended to the east to the line designated in the record as the Bland line, while the New York & Texas Land Company, Limited, claimed that section No. 8 extended to the west to the line designated in the record as the Nelson line. The controversy as to the location of the boundary line between these two surveys was settled by J. H. Singleton executing the following instrument:

"State of Texas, County of Orange.

"Know all men by these presents that I, Jos. H. Singleton, do hereby acknowledge and agree that the line as run by Thos. C. Nelson is the line of the John Harmon survey in Orange Co. Texas.

"Beginning at a stake set in a glade for the E. cor. of said Harmon Sur. from which a Pine 10″ dia. Marked X. brs. N. 80-3/4 W. 14-3/4 vrs. a Pine 18″ dia. marked X brs. S. 61-1/2 E. 45 vrs. Thence S. 40-1/2 W. with variation of 8 deg. 00′, East 2453 vrs. to stake in edge of a prairie for the S. cor. of said J. Harmon sur. from which a P. O. 10″ dia. mkd. X brs. S. 70½ E. 22½ vrs. a Bl. Jack 5″ dia. mked. X. brs. S. 23-3/4 E. 6½ vrs. and a Pine 15″ dia. mked. X. brs. S. 53 E. 19½ vrs;

"And I do hereby quitclaim to any and all improvements lying S. E. of aforesaid line and on Sec. 8 of the lands of the International Railroad grant in the said County of Orange, Texas, and now belonging to the New York and Texas Land Co., Ltd.

"In testimony whereof I hereunto sign my name this 19th day of Feb., 1896.

"J. H. Singleton.

"Witness:
"Thos. C. Nelson
"Ed. Bland."

Appellees acquired their title with full knowledge of the existence of this instrument and of the circumstances under which it was executed. After this instrument was executed by Singleton, for a long time he recognized the Nelson line as the correct boundary line. Notwithstanding this settlement, appellees, claiming under J. H. Singleton, entered upon the disputed strip and cut timber therefrom to the amount of 196,968 feet, which was of the reasonable market value of $10 per thousand. In addition to praying for title to the land lying between the Nelson line to the west and the Bland line to the east, appellants also prayed for judgment against appellees for the value of the timber cut from this land. L. Singleton answered by the usual pleas, and specially by

pleading the ten years' statute of limitation (Rev. St. 1925, art. 5510). Southern Land & Lumber Company, who cut the timber under Singleton, answered generally, and prayed for judgment over against Singleton for any amount appellants might recover against it.

The trial was to a jury, and, on conclusion of the evidence, appellants asked for an instructed verdict in favor of the Nelson line, on the ground that appellees had failed to raise the issue of ten years' limitation, and further that the instrument above copied constituted a valid and binding settlement of the controversy, and further that all the evidence was to the effect that the Nelson line was the true boundary line. This request was refused, and the issue between the Nelson line and the Bland line was sent to the jury by question No. 1, and answered in favor of the Bland line. The issue of ten years' limitation was sent to the jury by questions 2, 3, 4, and 5, and all elements of ten years' limitation were found in favor of appellees; except by answering question No. 4 the jury found that the possession of appellees and those under whom they hold was not adverse to appellants and those under whom they hold. This answer determined the issue of limitation in favor of appellants. After the verdict was returned, appellants moved the court for judgment in their favor on the ground that the instrument above copied settled all boundary issues in their favor. This motion was denied, and judgment on the answer to question No. 1 was entered in favor of appellees, from which appeal has been duly prosecuted to this court.

Appellants ask that the judgment of the lower court be reversed and judgment rendered by this court in their favor on two grounds: (1) The instrument executed by J. H. Singleton constituted a binding settlement of the boundary issue; and (2) no evidence was offered against appellants' claim that the Nelson line was the true boundary line between the surveys. Appellees answered the first proposition by the following counter propositions: (1) The instrument relied upon was executed without consideration; (2) not having been executed by New York & Texas Land Company, Limited, the instrument was void; (3) the instrument evidenced a unilateral agreement in that no evidence was offered that New York & Texas Land Company ever accepted or recognized it as settling the boundary issue, and there was no evidence that it ever accepted or recognized the Nelson line as the true boundary line.

The facts under these propositions are as follows: The instrument in question, after its execution, passed into the hands of appellants and those under whom they hold, and was recorded by them on May 10, 1929, after this suit was filed. On the trial of this case, this original instrument was offered by appellants in evidence. There was also evidence that Thomas C. Nelson was the agent of New York & Texas Land Company, Limited, and acted as its agent in procuring this instrument; that a controversy existed between Singleton and New York & Texas Land Company, Limited, as to the location of the boundary line between these two surveys; that this instrument was executed by Singleton and accepted by Nelson as agent of New York & Texas Land Company, Limited, in settlement of this controversy; that for a long time Singleton recognized this Nelson line as the correct boundary line, and at all times since the execution of this instrument appellants and those under whom they hold have claimed to the Nelson boundary line. The following testimony, we think, fully sustained these conclusions: Mr. J. H. Singleton, son of J. H. Singleton, who executed the instrument, testified: "As to whether my father told me that, at the time he signed that boundary agreement fixing the south line of the Harmon survey as the Nelson line, there was a controversy existing between him and the New York & Texas Land Company as to the proper location of that line—yes sir, the line was not where my father thought it should be. Yes, there was a controversy existing between them at that time, and he told me with that controversy existing between them he went ahead and executed that document."

Mr. Levi Singleton testified: "When you ask if I know of anything occurring between my father and Mr. Nelson as to the line between the Harmon and Section 8, I only know that Nelson came up there to see him with some paper, and my father refused to sign it, and then I understood later that he had signed some paper. Yes, it is a fact that Nelson told my father he was going to file a suit, and my father signed the agreement, to prevent the suit."

That J. H. Singleton, after the execution of the instrument, recognized the Nelson line as the boundary line is shown by the following testimony. Mr. Levi Singleton testified: "My father did try to sell lands for the Texas— for the New York & Texas Land Co., Limited during 1897, and possibly 1898. I don't know that he was any agent of theirs. Yes, he was trying to sell their property. I know he advertised in the paper. That is all I know."

Mr. Henry Singleton testified: "Yes, I know it to be a fact that for some two or three years after my father signed that boundary agreement he was agent for the New York & Texas Land Company with respect to their lands down there. Yes, he looked after their properties down there for approximately two years. I don't know if they paid him a salary."

Mr. Henry Singleton further testified: "I

know my father was disturbed about this coming up, and he told me that he signed this under protest—that is, to keep down a lawsuit, etc. Yes, he told me he signed it, and later he saw Mr. Hart and asked him to take some action to get that set aside and Mr. Hart told him."

On this issue, though the jury found that appellees were in possession of the disputed strip for more than ten consecutive years prior to the filing of this suit, it was further found that this possession was not adverse to appellants. Not being adverse, it was necessarily in recognition of appellants' claim. After the execution of the instrument, J. H. Singleton recognized the Nelson line in the following deeds: (a) In 1902 he sold a small tract of land off the Harmon survey, calling for it to be in the "southwest line of the John Harmon Survey." The southwestern line thus called for must be located by the Nelson line. On the 22d of June, 1896, J. H. Singleton deeded a right of way across the Harmon survey to T. & F. S. Railway Company, locating it by reference to the boundary lines of the Harmon survey with the Nelson line as its west boundary line.

 On the facts as stated, there is no merit in appellees' counter propositions. There was a controversy as to the location of the boundary line. The instrument in question was executed in settlement of that controversy, and to prevent a lawsuit. It was accepted by New York & Texas Land Company, Limited, in settlement of the controversy, and the lawsuit was not filed. These facts constituted a valuable consideration for the instrument. Knapp v. Mills, 20 Tex. 124; Levy v. Maddox, 81 Tex. 210, 16 S. W. 877; Lecomte v. Toudouze, 82 Tex. 208, 17 S. W. 1047, 27 Am. St. Rep. 870; Carr v. Bordner (Tex. Civ. App.) 219 S. W. 282. That the instrument was not signed by New York & Texas Land Company, Limited, did not destroy its effect. It was executed by Singleton, delivered to and accepted by New York & Texas Land Company, Limited, and those holding under it, from the date of its execution to the date of the trial of this case when the original was offered in evidence. It is the law of this state that where one party to a written contract signs it, and the other, without signing it, accepts and retains it in his possession, he is thereby bound by its terms to the same extent as if he had formally joined in its execution. Martin v. Roberts, 57 Tex. 564; Pioneer Savings & Loan Co. v. Paschall, 12 Tex. Civ. App. 613, 34 S. W. 1001; Kearby v. Hopkins, 14 Tex. Civ. App. 166, 36 S. W. 506; Dockery v. Thorne (Tex. Civ. App.) 135 S. W. 593. Citing Martin v. Roberts, supra, the Supreme Court said, in Campbell v. McFadin, 71 Tex. 28, 9 S. W. 138, 139: When one party to a written contract signs, and the other

accepts it without signing, the one failing to sign is as fully bound as if he had signed, and, as consequence, is also entitled to its benefits to the same extent as if he had signed it."

The instrument in question did not evidence a unilateral contract. Mutuality does not require that both parties sign the contract, but only that they be equally bound by its obligations and entitled to its benefits as per its conditions. Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S. W. 1101. The facts stated brought New York & Texas Land Company, Limited, within this rule.

On these conclusions, this instrument constituted a valid settlement of the boundary issue, fixing the Nelson line as the boundary line between these two surveys. This agreement was never abrogated or set aside, and was in full force and effect when this case was tried. In fact, appellees made no attack thereon except by the counter propositions above stated. We think, on conclusion of the evidence, the trial court should have instructed a verdict in favor of appellants against appellees for the title to the land in controversy, fixing the Nelson line as the boundary line between these two surveys, and also in favor of appellants against appellees for the value of 196,968 feet of timber cut from the disputed strip at $10 per thousand. Under the pleadings and prayer of Southern Land & Lumber Company, who cut this timber under a warranty deed from L. Singleton, it is entitled to judgment over against L. Singleton for the amount of the judgment recovered by appellants against it.

We pretermit a discussion of appellants' proposition that, as a matter of law, the Nelson line was shown to be the correct boundary line between the two surveys. However, we would say on this issue that, if the evidence offered in support of the Bland line has any probative force, it was sufficient to support the jury's verdict. The issue, as thus stated, presents a question of law and not of fact.

The judgment of the lower court is reversed, and judgment here rendered as above indicated.

### On Rehearing.

By their eighteenth proposition of error on rehearing, appellees assert that we are in error in rendering a personal judgment against appellee Mrs. Clara Singleton. If our opinion is subject to this construction, it should be corrected, for a personal judgment against Mrs. Singleton would be without support.

Appellees have carefully briefed their motion, both by reference to the record and by a review of the adjudicated cases. But after giving our best consideration to the different points presented by the motion, we think they should all be overruled, except as above indicated.